United States District Court
Southern District of Texas
**ENTERED**
October 25, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VALERIE G. HARRIS, | § § § |
| Plaintiff, | § § |
| v. | §  CIVIL ACTION NO. H-22-3199 |
| | § § |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | § § § |
| Defendant. | § § § |

**MEMORANDUM AND OPINION**

The plaintiff, Valerie Harris, filed an insurance claim with the defendant, Allstate Vehicle and Property Insurance Company, after noticing that rainwater was leaking through her ceiling into her living room. Allstate denied the claim because it concluded that the damage, which it categorized as non-storm related, fell below the deductible on Harris's homeowners' insurance policy. Harris filed this action in state court, and Allstate removed on the basis of diversity jurisdiction. (Docket Entry No. 1). Allstate now moves for summary judgment. (Docket Entry No. 22). Based on the motion, the response, the record, and the applicable law, summary judgment is granted in part and denied in part. The reasons are set out below.

**I.     Background**

Valerie Harris, owns a home in Katy, Texas. (Docket Entry No. 22-1 at 99; Docket Entry No. 25-1 at 146). She lives there with her sister, Gerlaonda Harris. (Docket Entry No. 25-1 at 147). On April 10, 2021, Harris purchased homeowners' insurance from Allstate Vehicle and Property Insurance Company. (Docket Entry No. 22 at 5). Harris renewed the policy for a one-year term on April 10, 2022. (Docket Entry No. 22-1 at 99).

Around April 22, 2022, during a rainstorm, Harris noticed that water was leaking from her ceiling. (Docket Entry No. 25-1 at 146). She called a roofer, who conducted an inspection on April 25, 2022, concluded that Harris's roof had been damaged from hail and told her that it would cost $1,000 to put tarps on the roof. (*Id.*; Docket Entry No. 22-1 at 36). The next day, Harris called her insurance agency, Joe McGee & Associates. (Docket Entry No. 25-1 at 146). She told the agent, Andrew Day, that her roof was leaking from storm damage on April 22, 2022. (*Id.*). Because Harris's homeowners' insurance had a deductible of $4,811, Day advised Harris to get a repair estimate from a roofer before filing a claim with Allstate. (*Id.* at 146–47).

Either Harris or her sister, Gerlaonda, called Joe McGee & Associates back the same day. (*Id.* at 147). Harris and her sister testified in their depositions that it was Harris who called back. (Docket Entry No. 22-1 at 246, 259–60). They then contradicted this testimony in their summary judgment affidavits, swearing that Harris's sister Gerlaonda called the second time because Harris "had to get on a work call on Teams." (Docket Entry No. 25-1 at 147, 149). The sister stated in her affidavit that she had pretended to be Harris on the phone because Harris's "name is on the house." (*Id.* at 149). As explained below, the sisters' about-face triggers the sham-affidavit doctrine, so the court disregards the statements in the affidavit and finds that Harris made the second call.

When Harris called Joe McGee & Associates the second time, an agent named William Hooks answered. (Docket Entry No. 22-1 at 163). Harris told Hooks that the damage to her roof "occurred awhile ago during the freeze" and that she "didn't realize that the[] [damage] w[as] so severe" until she noticed the leak "just yesterday during the storm." (*Id.*). Hooks asked whether she meant the freeze of February 2021, and Harris confirmed that she did. (*Id.*). When Hooks told Harris that her home was not covered by Allstate in February 2021, Harris pivoted to an April 25,

2

2022, date of loss, while stating that "I don't know when it all occurred." (*Id.*). Hooks submitted a claim identifying an April 25, 2022, date of loss, as Harris requested. (*Id.*; Docket Entry No. 22-1 at 65). Hooks then notified Allstate that he suspected Harris's claim was fraudulent. (Docket Entry No. 22-1 at 164, 167).

Allstate inspected Harris's home the following week. The inspector, Amauri Thompson, took photographs of the roof. He found and photographed blisters on the roof, but no wind or hail damage. (*Id.* at 56). Thompson observed interior damage to Harris's home, including "ceiling damage." (*Id.*). Allstate's assigned adjuster, Ryan Hulbert, reviewed Thompson's report and photos, concluding that the "photos show there was no collateral damages to the insureds roof components as the roof vents are clean and have no marks that [s]how hail was present . . . ." (*Id.*). Hulbert agreed with Thompson that the marks on the roof were "blisters." (*Id.*). Hulbert concluded that, "[a]t this time, the insureds damages do not exceed their deductible." (*Id.*).

On May 6, 2022, Allstate sent Harris a denial letter explaining that Allstate would issue no payment because "your damage estimate is less than your policy deductible of $4,811.00." (*Id.* at 155).

In June 2022, Harris sent Allstate a pre-suit notice letter as required by § 542A.003 of the Texas Insurance Code.[1] (*See* Docket Entry No. 22-1 at 153). Because Harris's letter claimed that there was "additional damage not originally inspected by [Allstate's] adjusters," Allstate conducted a second inspection of Harris's home, led by adjuster Sarah Wilson. (*Id.* at 15, 153). Wilson concluded, based on weather reports, that there had been no hailstorms during the policy

---

[1] Section 542A.003(a) provides:

> In addition to any other notice required by law or the applicable insurance policy, not later than the 61st day before the date a claimant files an action to which this chapter applies in which the claimant seeks damages from any person, the claimant must give written notice to the person in accordance with this section as a prerequisite to filing the action.

3

period.  (*Id.* at 16).   Wilson observed "[m]inor water damage to ceiling of living room, kitchen/dining area, bathroom and bedroom."  (*Id.*).  She also observed that three tarps had been installed on the roof.  (*Id.*).  Under the tarps, Wilson observed "zippering," "an open hole of non-storm origin," and a "creased shingle due to wind."  Wilson concluded that the damage was "[b]elow [d]eductible."  (*Id.*).

In August 2022, Harris filed this action against Allstate, alleging breach of contract, violations of the Texas Prompt Payment of Claims Act, TEX. INS. CODE § 542.051 *et seq.*, and violations of Chapter 541 of the Texas Insurance Code, § 541.001 *et seq.*  (Docket Entry No. 1-4). Harris seeks actual damages "in at least the amount of policy benefits wrongfully withheld."  (*Id.* at 5).  She also seeks treble and exemplary damages under § 541.152, and attorneys' fees.  (*Id.*).

## II. The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the [nonmovant] bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the [nonmovant] the

4

burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets the Rule 56(c) burden, "the [nonmovant] must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which th[e] evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quotation marks and quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor, *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022), but a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quoting reference omitted). The court must not make credibility determinations on summary judgment. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016). Instead, the court "must disregard all evidence favorable to the moving party that the finder of fact is not required to believe." *Id.* (quoting reference omitted) (alterations adopted). The nonmovant's version of events must be accepted if supported by more than a mere scintilla of evidence. *See id.*

**III.    Analysis**

Allstate moves for summary judgment on three grounds.  First, Allstate argues that Harris has failed to raise a factual dispute material to determining whether her property damage was caused by a covered peril during the policy period.   Second, Allstate argues that Harris is barred from recovery because she misrepresented material facts to Allstate during the claims process.  Third, Allstate argues that Harris has produced no evidence to support her claims under Chapter 541 of the Texas Insurance Code.  Allstate makes no argument about Harris's claim under the Texas Prompt Payment of Claims Act.  For the reasons set out below, Allstate's third argument has merit.

**A.    Coverage**

The parties agree that Harris has the burden of proving that the damage to her house "(1) was caused by a peril named in the policy as a covered cause of loss, (2) which occurred while the insurance policy was in effect."  (Docket Entry No. 22 at 13 (citing *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 400 (Tex. 2016)); Docket Entry No. 25 at 14).  It is undisputed that Harris's home was insured by Allstate from April 10, 2021, to April 10, 2023.  (Docket Entry No. 22 at 5). Allstate argues, however, that to prevail on her claims, Harris must prove that the loss occurred during the term of her renewal policy (April 10, 2022 – April 10, 2023), not during the term of her initial policy (April 10, 2021 – April 10, 2022).  (Docket Entry No. 26 at 11–12).  Limiting the coverage timeframe to the renewal policy, Allstate argues that Harris has failed to produce evidence that the loss occurred while the renewal policy was in effect.  (Docket Entry No. 22 at 13–15).

The court is not convinced by Allstate's argument that Harris cannot satisfy her burden with evidence of a loss during the initial policy term.  In support of this argument, Allstate notes

that "[Harris]'s Petition alleges a breach of the policy specifically relating to the claim filed by [Harris] with an April 25, 2022, date of loss. Nowhere does [Harris] allege any other potential date of loss or potential relevant policy periods. If [Harris] had, Allstate would have asserted other pertinent defenses that potentially apply such as statute of limitations." (Docket Entry No. 26 at 11). Allstate does not cite authority holding that the date of loss that a plaintiff first asserts when filing her insurance claim binds her in subsequent litigation. Such a rule would be particularly inappropriate here because the actual date of loss is uncertain. Harris first noticed the leak on April 22, 2022, but, while she has given inconsistent dates of loss, she did tell Allstate that she did not "know when it all occurred." (Docket Entry No. 22-1 at 163). If Allstate has additional defenses that might apply to a loss during the initial policy term, it may move for leave to amend its answer.

The court finds that Harris has raised a factual dispute material to determining whether the loss occurred during the term of her initial policy. Harris's expert, Mark Earle, identified a hailstorm "at or around Harris's property on March 22, 2022." (Docket Entry No. 25-1 at 6). Hail measuring 0.75 inches fell during that storm, and the damage that Earle observed during his inspection of Harris's home "is consistent with 0.75" hail." (*Id.*). Earle concluded that "it is highly likely that [Harris's roof] was damaged by wind and hail during active coverage with Allstate." (*Id.* at 14).

Allstate has not produced or pointed to evidence showing, as a matter of law, that the loss was not caused by hail on March 22, 2022. Allstate notes only that, when Harris called her insurance agent the second time to file her claim, she stated that the loss was caused by the "freeze" in February 2021. (Docket Entry No. 22 at 13). She changed the date of loss when her insurance agent told her that the date she identified was outside her policy period. Harris's inconsistency in reporting the date of loss to her insurance agent is certainly relevant, but it does not defeat her

7

claim as a matter of law. Viewed in the light most favorable to Harris, the evidence shows that Harris was unsure of the actual date of loss when she filed her claim. (*See* Docket Entry No. 22-1 at 163) (stating "I don't know when it all occurred"). In light of this evidence, her inconsistency is not fatal to her claims.

### B. Misrepresentations

Allstate next argues that Harris is barred from recovering under the policy because she misrepresented the date of loss to Allstate. (Docket Entry No. 22 at 15). Allstate relies on a provision of the policy providing that Allstate will "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Docket Entry No. 22-1 at 130). The sole evidence on which Allstate relies to establish a misrepresentation is the recording of the second phone call with Harris's insurance agent. (*See* Docket Entry No. 22 at 15–16). According to Allstate, "[i]t is evident in the recording of the call during which [Harris] submits the claim to her agent's office that the date of loss she submitted the claim under was not the date of loss she knew to be the actual cause of the alleged damage." (*Id.* at 16).

Harris argues that she did not misrepresent the date of loss to the insurance agent, and that it was actually her sister, pretending to be Harris, who spoke to the insurance agent on the second phone call. (Docket Entry No. 25 at 15). Harris relies on the affidavits she and her sister submitted. (*Id.*). Allstate argues that the affidavits should be stricken under the sham-affidavit doctrine because they contradict the sworn deposition testimony that Harris and her sister gave. (Docket Entry No. 26 at 8–9). The court agrees.

The sham-affidavit doctrine prevents a party from defeating a motion for summary judgment "using an affidavit that impeaches, without explanation, sworn testimony." *Seigler v. Walmart*, 30 F.4th 472, 477 (5th Cir. 2022) (quoting reference omitted). "[A] nonmoving party

may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Id.* (quoting reference omitted). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting reference omitted).

Harris stated in her affidavit that, after calling her agent the first time, "I asked my sister, Gerlaonda Harris, to call the insurance agent back to speak to a supervisor. . . . Gerlaonda called the insurance agency, and after the call, she told me the supervisor told her he filed the claim and that the insurance company would send someone out in the next day or two." (Docket Entry No. 25-1 at 147). Gerlaonda Harris similarly stated in her affidavit that Harris "asked me to call the insurance company back to speak with a supervisor to see if we could get help." (*Id.* at 149). The sister continued: "I called the insurance agent and asked to speak to a supervisor. The agent told me his name was Will and that he was a manger. I told him I was my sister and that I wanted to speak to a supervisor because I did not like the way the previous agent talked to me. I told him I was Valerie because I did not think they would listen to me because Valerie's name is on the house. I did not know what the last insurance agent told Valerie or what she told him. I just knew that we needed help and Valerie asked me to call because she had to work." (*Id.* at 149–50).

The affidavits submitted by Harris and her sister directly contradict their earlier deposition testimony. Harris testified in her deposition that she spoke with agents from Joe McGee & Associates "for that first phone call where they told me to—I needed to get an inspector. And then I called them back to actually just go through filing the claim." (Docket Entry No. 22-1 at 246). Harris testified that she spoke to William Hooks. (*Id.*). Harris testified that her sister had "[n]o involvement" with the claims process. (*Id.* at 225). Harris's sister testified in her deposition that

9

she did not speak on the phone with any "Allstate representatives." (*Id.* at 259–60). She also stated that Harris "didn't really discuss anything" with her about Harris's phone call with the insurance agent. (*Id.* at 260).

The court finds that the affidavits submitted by Harris and her sister are sham affidavits. Accordingly, paragraphs 7–8 of Harris's affidavit, and paragraphs 6–10 of her sister's affidavit, are stricken. Without these paragraphs, the record requires the conclusion that only Harris spoke to the insurance agents on the phone.

Nonetheless, the court cannot conclude as a matter of law that Harris misrepresented material facts relating to her claim. Allstate has not produced evidence showing that, as a matter of law, Harris knew that the actual date of loss was February 2021 and knowingly concealed or misrepresented the date of loss to Allstate. As explained above, the evidence supports the conclusion that Harris did not know whether her roof was damaged in April 2022 or another date.

### C.   Chapter 541 Claims

Allstate first argues that Harris's claims under Chapter 541 of the Texas Insurance Code fail because her breach-of-contract claim fails. (Docket Entry No. 22 at 16). Allstate argues that "an insured may not prevail on an extra-contractual claim without first showing coverage for the insurance claim and that the insurer breached the policy." (*Id.*) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489–94 (Tex. 2018); *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015)). Because summary judgment is not appropriate on the present record on Harris's breach-of-contract claim, Allstate's argument fails.

Allstate next argues that Harris has no evidence to support her Chapter 541 claims. (Docket Entry No. 22 at 17–18). Chapter 541 prohibits "unfair or deceptive act[s] or practice[s] in the business of insurance." § 541.003. Harris argues that Allstate violated Chapter 541 by: (1)

refusing to pay Harris's claim without conducting a reasonable investigation, § 541.060(a)(7); (2) failing to promptly provide a reasonable explanation of the basis in the policy for denying Harris's claim, § 541.060(a)(3); (3) making material misrepresentations and omissions, §§ 541.051(1)(A), 541.060(a)(1), 541.061; (4) failing in good faith to effectuate a settlement once liability became reasonably clear, § 541.060(a)(2)(A); and (5) failing within a reasonable time to affirm or deny coverage or to submit a reservation of rights, § 541.060(a)(4). (Docket Entry No. 25 at 19–20).

### 1. Failure to Conduct a Reasonable Investigation

In support of her claim that Allstate failed to conduct a reasonable investigation, Harris notes that Allstate's first inspector, Thompson, "used pink chalk to document some dents [on roof vents] but neglected to use chalk to document similar dents on other vents." (*Id.* at 22). Harris also argues that the adjuster, Hulbert, unreasonably concluded that the photographs taken by Thompson "show there was no collateral damage to the roof components as the roof vents are clean and have no marks." (*Id.*). According to Earle, Thompson's photographs of the roof vents "show[] dents consistent with hail strikes." (Docket Entry No. 22-1 at 178). Harris does not explain how Allstate's second inspection, led by Wilson, was unreasonable.

Harris has failed to raise factual disputes material to determining whether Allstate denied Harris's claim without conducting a reasonable investigation. Using pink chalk to document some dents, but not others, is not evidence of an unreasonable investigation. Further, because Thompson's full report and photographs are not in the record, the court is unable to evaluate the reasonableness of Hulbert's conclusion that the photographs show "no collateral damage to the roof components." Harris's expert admits that "[i]t is unclear what photographs [] [Hulbert] is referencing." (*Id.* at 180). Finally, Harris has not identified any way in which Wilson's inspection

11

is unreasonable. For these reasons, summary judgment is appropriate on Harris's claim under § 541.060(a)(7).

### 2. Reasonable Explanation and Misrepresentations

Section 541.060(a)(3) makes it an "unfair settlement practice" to "fail[] to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." Various provisions of Chapter 541—relevant here, §§ 541.051(1)(A), 541.060(a)(1), and 541.061—prohibit material misrepresentations and omissions in connection with insurance.

Harris's reasonable-explanation and misrepresentation claims are based on Allstate's denial letter. That letter states that Allstate denied Harris's claim because "your damage estimate is less than your policy deductible of $4,811.00." (Docket Entry No. 22-1 at 155). Harris argues that the denial letter is not a prompt and reasonable explanation of the policy basis for denying the claim because the letter "relies on Allstate's flawed and unreasonable investigation." (Docket Entry No. 25 at 22–23). For the same reason, she argues that the denial letter was a misrepresentation, in violation of §§ 541.051(1)(A), 541.060(a)(1), and 541.061. (*Id.* at 23). Although Harris brings claims for misstatement of law under § 541.061(4) and material omission under § 541.061(2) and (5), she does not identify any basis in the record for these claims.

Harris's logic appears to be that if the investigation was unreasonable, then Allstate's explanation that the damage was below-deductible was both unreasonable and false. This argument is unpersuasive for three reasons. First, as explained, Harris has failed to produce or point to evidence that Allstate's investigation was unreasonable. Second, Allstate's representation about why Harris's claim was denied was not false. There is no dispute that the "damage estimate" that the adjusters submitted was below Harris's deductible. Third, Allstate's explanation for

denying Harris's claim—as opposed to the denial of the claim itself—is not causally connected to Harris's damages. *See Menchaca*, 545 S.W.3d at 490 ("[T]he Insurance Code only allows an insured to recover actual damages 'caused by' the insurer's statutory violation.") (citing § 541.151); *Seneca Res. Corp. v. Marsh & McLennan, Inc.*, 911 S.W.2d 144, 150 (Tex. App.—Houston [1st Dist.] 1995, no writ) (insurance plaintiff "was required to prove that its damages were caused by [the insurance broker]'s misrepresentation). Harris's alleged damages come from Allstate's denial of policy benefits. (Docket Entry No. 1-4 at 5). Harris has not explained how, and the record does not support finding, that Allstate's explanation in the denial letter caused her damages. Summary judgment is appropriate on these claims.

### 3. Bad Faith

Section 541.060(a)(2) makes it an "unfair settlement practice" to "fail[] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear[.]" "The threshold of bad faith is reached when a breach of contract is accompanied by an independent tort." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). An insurer is liable for bad faith if it "knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). Whether it was reasonably clear that the claim was covered must be judged by the facts before the insurer at the time the claim was denied. *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). An insurer may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *Giles*, 950 S.W.2d at 56.

Evidence that shows only a *bona fide* coverage dispute does not, standing alone, demonstrate bad faith. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). "Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis

13

for its denial of the claim, or about the proper construction of the policy." *Moriel*, 879 S.W.2d at 18. "A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith." *Id.* However, an insurer's reliance on an expert to deny a claim does not insulate it from liability as a matter of law. *Nicolau*, 951 S.W.2d at 448. An insurer may be liable for bad faith "if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *Id.*

Allstate argues that Harris's bad-faith claim fails as a matter of law because the evidence shows no more than a *bona fide* coverage dispute. (Docket Entry No. 22 at 18–19). Allstate also argues that it "had a reasonable basis for its decision on the claim, which it explained and documented." (*Id.* at 19). Specifically, Allstate notes that it "conducted two separate inspections of the property" and "two different adjusters concluded there was not storm related damage to [Harris]'s property that exceeded her deductible." (*Id.*). Allstate also relies on the expert opinions of Matt Quigley and Russell Letcher, who "agreed with Allstate's scope and extent of potential storm damage to [Harris]'s property." (*Id.*).

Harris has failed to produce evidence that supports an inference of bad faith. Because Allstate relied on expert opinions to deny Harris's claim, Harris must raise a factual dispute as to whether the report was "objectively prepared or the insurer's reliance on the report was unreasonable." *Nicolau*, 951 S.W.2d at 448. Harris has failed to raise a factual dispute as to whether Allstate's inspections were reasonable, and Harris does not point to evidence showing that the inspectors' reports were not objectively prepared. Summary judgment is appropriate on the bad-faith claim.

### 4. Failure to Affirm or Deny Coverage

Section 541.060(a)(4) makes it an "unfair settlement practice" to "fail[] within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder." Harris asserts a claim under this section but fails to point to any evidence supporting it in her summary judgment response. The court finds that this claim fails as a matter of law because Allstate denied Harris's claim ten days after it was filed. (Docket Entry No. 22-1 at 155).

## IV. Conclusion

The motion for summary judgment, (Docket Entry No. 22), is granted in part and denied in part. Summary judgment is granted as to Harris's claims under Chapter 541 of the Texas Insurance Code. It is denied as to Harris's breach-of-contract claim.

SIGNED on October 25, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge